Anthony J. Ferraro, J.
Plaintiffs maintain this application for a preliminary injunction mandating restoration of gas and electric service to their premises during the pendency of this action.
The action is for a permanent injunction mandating continuation of such service and for a judgment declaring that Con Edison’s refusal to supply utilities contravenes the Transportation Corporations Law. A judgment is also sought declaring that the remaining defendants have failed to fulfill their duty in supplying the necessary funds for gas and electric service pursuant to the Social Services Law.
Plaintiffs receive grants of public assistance in the category of home relief. While receiving such grants which contained an allowance for utilities, plaintiffs were unable to manage the funds and failed to pay the utility bills. In February, 1977, they requested the Department of Social Services to pay the utility arrears but their request was denied. On May 31, 1977, Con Edison terminated service because of accumulated arrears of $359.25. Plaintiffs then requested an emergency grant of assistance to pay the arrears which was denied on June 20, 1977.
*716 Subdivision 2 of section 15 of the Transportation Corporations Law provides: "It shall be unlawful for any gas or electric corporation to discontinue the supply of gas or electricity to any person or persons receiving public assistance, for non-payment of bills rendered for service, if the payment for such service is to be paid directly by the department of social welfare or the public welfare official in such locality.”
The Department of Social Services has agreed to authorize payment of all of plaintiffs’ future utility bills either by direct payment or voucher payment but Con Edison has refused to restore service until all the arrears are paid. The Department of Social Services has refused to pay the arrears.
In the recent case of Matter of Rivera v Berger (89 Misc 2d 586) it was held that all of the arrears must be paid by the Department of Social Services before Con Edison can be required to continue service pursuant to the above provisions of the Transportation Corporations Law. The reasoning used was that if only prospective payments were made the utility company would be relegated to seeking a judgment for the arrears which would be uncollectible and the utility company would thereby be deprived of its property without due process.
This court cannot agree with the holding or reasoning of the Rivera case. There would be no need for subdivision 2 of section 15 of the Transportation Corporations Law if the arrears are to be paid by the Department of Social Services because once the account is current the customer is entitled to continued service as a matter of right without the law. The obvious purpose of this section is to assure a continuation of service to a person receiving public assistance whose account is not current but whose current service will be paid for directly by the Department of Social Services. The proponents of subdivision 2 of section 15 of the Transportation Corporations Law recognized that utility companies would object to a continuation of service without payment of the arrears but enacted the law nevertheless with knowledge aforethought. The intent of the law is clearly expressed in the statement that service is not to be discontinued "for non-payment of bills rendered for service”. The Transportation Corporations Law was enacted in the public interest to control utility companies serving the public needs. It was not intended nor may it be construed to control the Department of Social Services or to dictate the expenditure of public funds as a condition precedent to service.
*717 The continuance of service with payment as rendered cannot constitute a deprivation of property. The past service for which payment has not been made has already been voluntarily surrendered. The utility company cannot be deprived of its property without due process, because it can cut off the service when it does not get paid. Any deprivation without payment is therefore through its own choice. The utility cannot shift the blame for the accumulation of the arrears. It elected to continue service with full knowledge of the facts including the fact of continued nonpayment. A diligent discontinuance of service for nonpayment would have triggered direct payments before accumulation of substantial arrears. The utility may not be permitted to build up the arrears and then use the sanctioned accumulation to penalize the welfare recipient.
In the final analysis then, there is no deprivation of property without due process. There is merely a limitation of the unusual creditors remedy in cases involving recipients of public assistance. And the very statute which conferred that unusual right to cut off service to secure payment properly precluded its application to welfare customers who would be unable to pay in any event. (See Transportation Corporations Law, § 15, subds 1, 2.)
The court is bound to carry out the intended purpose of the statute without consideration of its constitutionality. The constitutionality of the statute cannot be collaterally attacked. It is presumed valid until proven otherwise. Any challenge of its legality must be on notice to the Attorney-General whose duty it is to defend it.
The court is mindful of the reported decisions which sustain the right of the utility to discontinue service to a customer who has not paid his bill. (People ex rel. Kennedy v Manhattan Gas Light Co. 45 Barb 136; Clark v Utica Gas & Elec. Co., 224 App Div 448; Dworman v Consolidated Edison Co. of N. Y., 26 AD2d 535.) The rule enunciated by these cases has been incorporated into subdivision 1 of section 15 of the Transportation Corporations Law. It affords to a utility company an extraordinary creditor’s remedy, viz., the right to discontinue service to gain collection of arrears. This remedy may be effective in the ordinary case and may well accomplish the desired result of obtaining payment without litigation. However, its effectiveness is lost as to welfare recipients who have no means to pay. The Legislature in its wisdom recognized that discontinuance of utility service is not an appropriate *718 means of securing payment from recipients of public assistance and enacted subdivision 2 of section 15 of the Transportation Corporations Law. It thereby subjugated the collection remedy of the utility to the more important right of the welfare recipient to survive.
Prior to May 1, 1977, plaintiffs could have received a cash grant to pay the utility arrears pursuant to section 131 of the Social Services Law. Such grants were considered necessary to ward off destitution of dependent children. However, by amendment to subdivision 12 of section 131 effective May 1, 1977, the Department of Social Services is no longer required to make such grants when a previous allowance included utilities. The Department of Social Services cannot therefore be compelled to pay for the utilities again.
If service is not continued, plaintiffs will be unable to light or heat their home, refrigerate or cook their meals or otherwise enjoy the basic requirements of life. In short, they will suffer irreparable harm and irreversible economic hardship. They have a clear right to injunctive relief pursuant to statutory provision. The equities weigh in plaintiffs’ favor who stand to lose much more than defendants can gain by a denial of the injunction. The necessary elements to justify injunctive relief have been demonstrated. (See Albini v Solork Assoc., 37 AD2d 835.) The dispute over payment of the arrears must be settled by means other than discontinuance of service.
Application granted. Defendant, Con Edison, is directed to restore service and defendant, Bates, is directed to pay for same on a current basis.